IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

Abingdon Division

| | |
|---|---|
| SHAWN PARENTI,<br>    **Plaintiff**<br>v.<br><br>CODY ROWE<br><br>    **Defendant** | )<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>) |

**SERVE:**    **Cody Rowe**
                **Keen Mountain Correctional Center**
                3402 Kennel Gap Rd.
                Oakwood, VA 24631

## COMPLAINT

The plaintiff, Shawn Parenti ("Parenti"), by counsel, moves the Court for judgment against the defendant, Cody Rowe ("the Defendant" or "Rowe"), on the grounds and in the amounts hereinafter set forth, and in support thereof alleges the following:

### JURISDICTION AND VENUE

1) This is an action for damages brought pursuant to 42 U.S.C.§ 1983 for excessive force and for state law claims, including the torts of intentional infliction of emotional distress, assault and battery, and false imprisonment. This Court has jurisdiction over Parenti's 1983 claims pursuant to 28 U.S.C. § 1331 and his state law claims under its supplemental jurisdiction pursuant to 28 U. S. C. § 1367.

1

2) This action arises from the violation of Parenti's Civil Rights guaranteed by the United States Constitution by the Defendant, who, acting under the color of state law, illegally detained and injured Parenti and deprived him of his liberty.

3) The actions complained of herein occurred at Keen Mountain Correctional Center ("KMCC") in Buchanan County, Virginia. Venue is proper inasmuch as KMCC is in the Abingdon Division of the United States District Court for the Western District of Virginia.

## GENERAL ALLEGATIONS

4) On or about June 1, 2017, Parenti was incarcerated at KMCC located in Oakwood, in Buchanan County, Virginia.

5) KMCC is a facility owned and operated by the Commonwealth of Virginia Department of Corrections ("the DOC").

6) At approximately 3:15 p.m., Parenti was exiting C-Building, where he was housed, to go to dinner and realized he did not have his inmate identification card.

7) The corrections officer on duty, Correctional Officer Short ("CO Short"), gave Parenti permission to obtain his inmate identification card from his cell, and radioed three times to the K-9 handlers, including the Defendant, Officer Cody Rowe, and others involved in this incident that Parenti would be coming out of his pod after the rest of the inmates.

8) Parenti does not know the canine handler or his dog that were involved in this incident. However, as a consequence of a FOIA request to the Department of Corrections ("DOC"), it is believed that the canine handler on duty was the Defendant, K-9 Officer Cody Rowe, and the canine was named Django ("Django"). Rowe was employed by DOC.

2

9) During all times relevant to this proceeding, Rowe was acting as the agent, servant and employee of the DOC. Further, Rowe at all times relevant to the claim herein was acting under color of state law.

10) After obtaining his inmate identification card, Parenti initially did not see Rowe or Django. After walking through the metal detector located outside the doorway, Django was directly in front of Parenti's face on an eight-ten-foot (8-10) leash.

11) Django viciously attacked Parenti without provocation for approximately forty-two (42) seconds. During this time, Parenti attempted to shield himself with his right arm and hand.

12) During the attack, Rowe made no effort to restrain Django. Rowe had his hand on Parenti's back holding him down, while Django attacked Parenti. Rowe was petting Django and telling him "good dog" during the attack.

13) The Defendant was negligent in the following respects:

   a) There have been other occurrences of canine bites to others, both inmates and staff, at KMCC preceding this incident;
   b) He failed to reasonably anticipate that Django may attack and injure Parenti, especially when he was trained as an attack dog;
   c) He failed to exercise reasonable diligence, common prudence and ordinary care to prevent Django from attacking and injuring Parenti;
   d) He failed to control Django so as not to allow the canine to attack and injure Parenti;

3

e) He failed to exercise ordinary care so as to permit Django to attack, bite and seriously injure Parenti;

f) He failed to provide adequate medical facilities to Parenti in which he was treated for the attack. Parenti was only treated at KMCC on the day of the attack. He was not taken to any other medical facility;

g) He failed to sufficiently treat Parenti's injuries. Specifically, his arm was not sutured, but only bandaged with butterfly bandages, all of which amounts to a breach of the standard of care; and

h) He failed to obtain the necessary education, training and experience as a corrections officer and K-9 handler.

14) As a direct and proximate result of the K-9 attack, Parenti suffered serious physical injuries to his right hand, wrist, and his arm up to his elbow. The injuries left his bone exposed and he has multiple scars.

15) As a further direct and proximate cause of the K-9 attack, Parenti also suffers from serious mental and emotional injuries. Parenti now suffers from anxiety. He was treated by the mental health counselor at KMCC the morning after the incident due to nervousness and anxiety, and could not forget and has been unable to forget the smell of the canine or the encounter.

16) Weeks later, Parenti was treated by a neurologist, Dr. Emily Shields, at Mountain Empire Neurology, located in Abingdon, Virginia, where he was scheduled for additional nerve conduction testing to be performed at Johnston Memorial Hospital ("JMH"), also located in Abingdon, Virginia.

4

17) Upon information and belief, a video tape recording of the incident exists; however, KMCC and the DOC have been unwilling and have refused to provide such recording, or a copy thereof, to Parenti's counsel to view despite an FOIA request. The Virginia Attorney General's Office ("the AG's office") claims that the tape recording is exempt from the Freedom of Information Act (" the FOIA").

18) Upon information and belief, the Virginia State Police ("the VSP") investigated this incident, along with the Unit Investigator; however, the investigation did not occur until eight (8) days after the incident. The results of those investigations are unknown to Parenti.

19) The acts complained of herein were undertaken intentionally, knowingly, recklessly, and wrongfully, and the Defendant listed is liable for both punitive and compensatory damages sustained by Parenti.

## COUNT ONE

## 42 U. S. C. § 1983

## VIOLATIONS OF AMENDMENTS FOUR AND EIGHT OF THE UNITED STATES CONSTITUTION

20) Parenti reallges the allegations contained in Paragraphs 1 through 19, and the same are made a part hereof and are incorporated by reference herein.

21) The United States Constitution provides that no person shall be deprived of liberty except through due process of law. Parenti was deprived of his liberty commencing on June 1, 2017, by the Defendants and others who held him against his will during the K-9 attack and who unnecessarily sicced the K-9 on him. Specifically, the treatment of Parenti during that period of confinement and the attack, including, but not limited to, allowing the K-9 to attack at all; allowing the K-9 to attack for approximately 42 seconds; making no effort to restrain the K-

5

9; subduing Parenti with the CO's hands on his back while the K-9 attacked; and provoking the K-9 to continue to attack by saying "good boy," violated the Fourth Amendment's prohibition against Excessive Force and the Eighth Amendment's prohibition against Cruel and Unusual Punishment. Further, those actions constitute cruel and unusual punishment and excessive force in violation of the Eight Amendment.

22) As a direct and proximate result thereof, Parenti sustained serious and permanent injuries; has suffered and will continue to suffer great pain of body and mind; has sustained permanent disability, deformity, and loss of earning capacity; and has incurred and will incur in the future hospital, doctors' and related bills in an effort to be cured of said injuries.

## COUNT TWO

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23) Parenti reallges the allegations contained in Paragraphs 1 through 22, and the same are made a part hereof and are incorporated by reference herein.

24) (1) The Defendant had the specific purpose of inflicting emotional distress upon Parenti and/or intended his specific conduct and knew, or should have known, that his conduct would likely result in emotional distress; (2) the Defendant's conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (3) Parenti suffered severe emotional distress; and (4) Parenti's emotional distress was caused by the Defendant's conduct.

25) As a direct and proximate result thereof, Parenti sustained serious and permanent injuries; has suffered and will continue to suffer great pain of body and mind; has sustained permanent disability, deformity, and loss of earning capacity; and has incurred and will incur in the future hospital, doctors, and related bills in an effort to be cured of said injuries.

6

Case 1:18-cv-00024-JPJ-PMS   Document 1   Filed 05/29/18   Page 6 of 9   Pageid#: 6

## COUNT THREE

## FALSE IMPRISONMENT

26) Parenti reallges the allegations contained in Paragraphs 1 through 25, and the same are made a part hereof and are incorporated by reference herein.

27) The Defendant falsely imprisoned Parenti by intentionally restricting his freedom of movement without any legal right whatsoever to do so. His false imprisonment of Parenti resulted from the intentional use of force, words, or acts which Parenti, who was restrained, was afraid to ignore or to which he reasonably believed he must submit.

28) As a direct and proximate result thereof, Parenti sustained serious and permanent injuries; has suffered and will continue to suffer great pain of body and mind; has sustained permanent disability, deformity, and loss of earning capacity; and has incurred and will incur in the future hospital, doctors, and related bills in an effort to be cured of said injuries.

## COUNT FOUR

## ASSAULT AND BATTERY

29) Parenti reallges the allegations contained in Paragraphs 1 through 28, and the same are made a part hereof and are incorporated by reference herein.

30) The Defendant assaulted Parenti by his threatening actions that put him in reasonable fear of imminent physical injury. The Defendant also battered Parenti by his intentional and unwanted touching of Parenti without justification, excuse, or the consent of Parenti.

31) As a direct and proximate result thereof, Parenti sustained serious and permanent injuries; has suffered and will continue to suffer great pain of body and mind; has sustained permanent disability, deformity, and loss of earning capacity; and has incurred and will incur in the future hospital, doctors, and related bills in an effort to be cured of said injuries.

## COUNT FIVE

## PUNITIVE DAMAGES

32) Parenti reallges the allegations contained in Paragraphs 1 through 31, and the same are made a part hereof and are incorporated by reference herein.

33) Defendant's actions were willful, wanton, reckless, intentional, and were undertaken with criminal indifference to his civil obligations.

34) Consequently, Parenti is entitled to an award of punitive damages against the Defendant to deter him and others similarly situated from engaging in similar conduct in the future.

## AD DAMMUM

WHEREFORE, Parenti, by counsel, moves the Court for judgment against the Defendant, in the amount of $1,000,000.00 in compensatory damages; $1,000,000.00 in punitive damages; interest on all such principle sums at the judgment rate of interest from June 1, 2017, until paid; his costs, expenses, and attorney's fees; and such other and further relief as the nature of this case may require.

**Parenti respectfully demands a trial by jury.**

                                  **SHAWN PARENTI**

                                  BY COUNSEL
/s/Thomas R. Scott, Jr.
Thomas R. Scott, Jr. (VSB # 16513)
STREET LAW FIRM, LLP
1142 Riverview Street
P. O. BOX 2100
GRUNDY, VA 24614
(276) 935-2128 – phone
(276) 935-4162 – facsimile.


/s/Michael A. Bragg
Michael A. Bragg, Esq. (VSB # 16797)
Bragg Law
380 W. Main Street
P. O. Box 1866
Abingdon, VA 24210
276-628-9160 – Phone
276-628-_____ - Facsimile